UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRUCE SIMONS, *et al*., | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-03-5825 |
| | § | |
| DYNACQ HEALTHCARE, INC., *et al*., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This class action has been filed on behalf of those who purchased or otherwise acquired shares of Dynacq Healthcare, Inc. ("Dynacq") from November 27, 2002 through December 13, 2004 (the "Class Period").  Named as defendants are Dynacq, Philip S. Chan, Chiu M. Chan, James N. Baxter ("Baxter"), and Ernst & Young, L.L.P. ("E&Y").

In particular, Plaintiffs' Second Amended Complaint (the "Complaint") seeks recovery for securities fraud under § 10(b) (and Rule 10(b)-5), and § 20(a) of the Securities Exchange Act.  Defendants have each filed a Motion to Dismiss the Complaint pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(3), and Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), for failure to satisfy applicable pleading requirements.

For the reasons that follow, the Motions to Dismiss of Baxter and E&Y are GRANTED, and the Motions of the other Defendants are DENIED.

## I.  STANDARD OF REVIEW.

The applicable legal standard is clear.  A motion to dismiss for failure to state a claim tests the formal sufficiency of the pleadings in a complaint.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960 (2002).  Accordingly, the Court must accept the factual allegations of the Complaint as true, view them in the light most favorable

to Plaintiffs, and draw all reasonable inferences in Plaintiffs' favor.  *Id.*   "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Swierkiewicz v. Sorema N.A.* , 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding* , 467 U.S. 69, 73 (1984)).

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Id.* at 511 (quoting *Scheuer v. Rhodes* , 416 U.S. 232, 236 (1974)).

## II.  <u>BAXTER'S MOTION TO DISMISS</u>

Baxter became an Executive Vice President of Investor Relations at Dynacq on July 15, 2003. He had previously done consulting work for the company.  During most of the Class Period, therefore, Baxter was not an employee of Dynacq.  At no time did his duties include preparing financial statements, or providing healthcare, which was Dynacq's business.

The only allegation in Plaintiffs' lengthy Complaint that refers to Baxter with sufficient specificity to satisfy the PSLRA is in paragraph 52.  In response to an article in <u>Barron's</u> that was critical of Dynacq and that apparently caused Dynacq's stock price to drop 23% on the day after the article appeared, Baxter said:

> The short sellers must be heaving a sigh of relief to have some negative "news" to pen-nit [sic] some covering positions before the Company reports its results for the fiscal year ended August 31, 2003.

Plaintiffs do not allege that Baxter had knowledge (i.e., scienter) that this statement was false.  And, indeed, the statement was almost certainly not false.  Short sellers would be pleased at a drop in Dynacq's stock price, just as they would generally be pleased at a drop in the price of any stock in which

they held a short position.  Baxter's reference to the forthcoming results for its fiscal year ending August 31, 2003, did prove erroneous.  But, again, Plaintiffs do not allege scienter and, in any event, such generalized statements about a company's prospects are not actionable.  *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,*  365 F.3d 353, 372 (5th Cir. 2004).

Accordingly, Baxter's Motion to Dismiss is GRANTED.

### III. ERNST & YOUNG'S MOTION TO DISMISS.

E&Y did audit and non-audit work for Dynacq.  Plaintiffs assert claims against E&Y for securities fraud under section 10(b) of the Securities Exchange Act of 1934 for E&Y's audit opinion of Dynacq's annual financial statements for the period ending August 31, 2002 ("2002 financial statements").

Dynacq engaged E&Y to be its outside auditor in June 2002.  The opinion on the 2002 financial statements was issued on November 22, 2002 and was without any qualifications or disclaimers.  E&Y resigned as Dynacq's auditor on or about December 17, 2003, citing an absence of internal controls necessary to develop reliable financial statements.

Plaintiffs' allegations as to the errors and omissions in the 2002 financial statements fall into four basic categories:

1.  a lack of independence by E&Y as a result of its doing both audit and non-audit work for Dynacq;

2.  the failure to note the insufficiency of internal controls;

3.  improper recognition of revenue with respect to workers' compensation payment provisions; and

4.  overstatement of accounts receivable.

A.  **Lack of Independence**

To begin with the first of these allegations, the Complaint does provide the amounts that E&Y received from Dynacq for its audit and non-audit services during pertinent times.  The Complaint also includes reference to strongly worded criticism by the SEC of E&Y's pattern of insensitivity to issues of independence in its work.  There is no allegation, however, that the SEC or anyone else forbade E&Y from doing audit and non-audit work for the same client.  Nor is there any suggestion that the SEC's criticism of E&Y related to its work for Dynacq, or to any of the individual E&Y partners or employees who worked on the Dynacq account.  The fact that the SEC had criticized E&Y as to issues of independence simply does not provide a sufficient basis for a securities claim against E&Y any time it does both audit and non-audit work for the same client.  *See Melder v. Morris* , 27 F.3d 1097, 1103 (5th Cir. 1994).

The remaining three categories of claims against E&Y relate to errors and omissions in E&Y's auditing of the 2002 financial statements.  And, if claims under the 1934 Act could be maintained for negligence, the Complaint would easily survive a motion to dismiss (which is not, of course, to say whether the claims can ultimately be proven).  *See Herman & MacLean v. Huddleston,*   459 U.S. 375, 381-82 (1983).

Under the PSLRA, however, Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  In this instance, the required state of mind is scienter, i.e., intent or severe recklessness.  The Complaint lacks the required particularity and does not give rise to an inference — much less a strong inference — of scienter.

If anything, the more logical inference is that E&Y would go to great effort to avoid engaging in anything resembling securities fraud.  Accountants are regularly sued for huge amounts and the  legal fees alone for the defense of even non-meritorious cases can easily consume all or a large fraction of the

amount of fees that E&Y had earned for its work on behalf of Dynacq.  Indeed, the fees from Dynacq were surely immaterial to the point of near triviality for an international firm of E&Y's size and overall fee revenue — not the kind of client for whom an accounting firm would normally want to take a substantial risk.  Moreover, none of the allegations in the Complaint, even taken as true, contain any suggestion that individual members of E&Y stood improperly to gain from concealing financial irregularities at Dynacq.  No one at E&Y is alleged to have owned Dynacq stock, to have received illicit benefits or promises of benefits, or to have sought in-house employment at Dynacq.

The allegations of specific errors in omissions in the 2002 financial statements will be considered in turn.

**B.  <u>Lack of Internal Controls</u>.**

E&Y's stated reason for its resignation from the Dynacq account in December 2003 was E&Y's conclusion that the company lacked the internal controls necessary to develop reliable financial statements.  E&Y stated:

> Specifically in November 2003, the Company's Chief Executive Officer negotiated a significant transaction to sell certain accounts receivable to another entity.  This transaction was not disclosed to the Company's Chief Financial Officer, the Company's independent auditors nor the Company's Board of Directors prior to its execution and represents significant deficiencies in the Company's disclosure controls, accounting controls and controls over the safeguarding of its assets.

Dynacq's 2003 10-K.  The transaction was never closed.

Plaintiffs seek to infer from the inadequacy of internal controls at the time of E&Y's withdrawal that internal controls were also lacking for the period covered by the 2002 financial statements.  But the Complaint contains no allegation that there was any similar transaction during fiscal 2002.  Additionally, because the transaction in question was never consummated, there would not seem to be any impact on Dynacq's financial statements, and Plaintiffs have alleged none.

Plaintiffs also invoke the fact that a successor auditor found internal control weaknesses in its audit of Dynacq's fiscal 2003 financial statements.  Again, this does not demonstrate weaknesses in

internal controls during fiscal 2002, nor is any impact on Dynacq's 2002 financial statements alleged.

Plaintiffs also refer to the fact that E&Y was Dynacq's fourth auditor in eight years.  This fact does distinguish Dynacq from most publicly traded companies, but it cannot be used, without substantially more, to show that E&Y knew or recklessly disregarded the alleged lack of internal controls during fiscal 2002.  If such an inference were allowed, publicly traded companies would be unable to obtain a successor auditor after one had resigned.

Plaintiffs also contend, apparently with justification, that operating expenses were misstated in the quarterly reports for FY 2003.  E&Y is not being sued, however, for the FY 2003 quarterly reports, upon which they did not opine.

Plaintiffs correctly point out that Dynacq was sued for violations of securities laws and that investigations were, at various times, undertaken by the SEC, NASDAQ, the Texas Attorney General, the Texas State Board of Medical Examiners, and Texas State Representative Ron Wilson.  Most public companies, however, are sued at one time or another and auditors are not required, even when the defendant company is unsuccessful in defending the suits, to credit all of the allegations in such suits. Plaintiffs' Complaint does not allege that E&Y failed to take into account Dynacq's litigation.  Also, Plaintiffs fail to allege with particularity how the investigations should have put E&Y on notice of internal control deficiencies in FY 2002, since each of them was initiated after E&Y issued its audit opinion.

C.  **Improper Recognition of Revenues by use of "Stop Loss" Provisions.**

Plaintiffs' set of contentions regarding improper recognition of revenue focuses on Dynacq's treatment of workers' compensation payments.  Specifically, Plaintiffs contend that Dynacq was able to overstate its revenue by using "stop loss" provisions of the applicable regulations as the rule rather than an exception, and that E&Y knew, or was reckless in not knowing, of this inappropriate treatment of revenue.  None of the sources that Plaintiffs rely upon for their allegations that E&Y knew or should

have known of this alleged impropriety — even if the allegations are assumed to be true — satisfy the requirement that such sources be described "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 352 (5th Cir. 2002) (quoting *Novak v. Kasaks*, 216 F.3d 300, 313-14 (2d Cir. 2000)).  Moreover, the Complaint also fails to make clear how the allegations as to the inappropriate treatment of revenue materially affected the 2002 financial statements.

     D.   **Improper Revenue Recognition Through Overstatement of Accounts Receivable.**

Plaintiffs further contend that Dynacq overstated the expected revenue from its accounts receivable.  Here again it must be noted that allegations of violating generally accepted accounting principles — even if true — do not suffice to show scienter.  *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 432 (5th Cir. 2002).  Moreover, the collectibility of accounts receivable, especially in a new and apparently fast-growing business, are notoriously difficult to estimate with precision.  In any event, the SEC has not required a writedown of Dynacq fiscal 2002 revenues or accounts receivable.  The reclassification by the successor auditor of certain accounts receivable from short-term to long-term status had no effect on net revenues, net income, retained earnings, or earnings per share.

Finally, even if the accounts receivable were misstated in the 2002 financial statements, the Complaint contains no allegations sufficient under the *ABC Arbitrage* standard to suggest scienter on the part of E&Y.

E&Y's Motion to Dismiss is GRANTED.

     IV.  **MOTIONS TO DISMISS BY DYNACQ, CHIU M. CHAN, AND PHILIP S. CHAN**.

Defendant Chiu M. Chan ("Chiu Chan"), the founder of Dynacq, is and was at all relevant times its Chief Executive Officer and Chairman of its Board of Directors.  Philip S. Chan ("Philip Chan") is and was at all relevant times Dynacq's Chief Financial Officer, Vice President of Operations, and a director.  He is alleged to hold advanced accounting degrees and to be a certified public accountant.

Both Chans signed and certified Dynacq's SEC filings during the Class Period.

Although Dynacq and the Chans invoke many of the same arguments as Baxter and E&Y as to why the Complaint should be dismissed against them, their arguments carry much less force.  That is so because the Complaint alleges, and Dynacq and the Chans do not seriously dispute, that before and during the Class Period, a Dynacq facility relied on, as its most prolific surgeon, a physician whose history of drug abuse, medical malpractice, unnecessary surgical procedures, and overbilling were, at all relevant times, well known to them.  The Complaint further alleges that, even after this surgeon's license was suspended by the Texas Board of Medical Examiners, Chiu Chan allowed the physician to continue to practice at a Dynacq hospital.

These allegations, by themselves, easily surpass the minimum pleading requirements necessary to survive a motion to dismiss.  At this early phase of the case, it would appear from the submissions that Dynacq and the Chans were willing to profit from a physician who was a known danger to the public.  Having done so, there is not only a strong inference, but a high probability that they knew there would be related problems with Dynacq's quality of care, with workers' compensation claims, with accounts receivable, and indeed, with the overall integrity of Dynacq's financial statements.  There would, likewise, be reason to be suspicious of the timing of any insider's sale of stock.

The Motions to Dismiss of Dynacq and the Chans are DENIED.

**V.  <u>CONCLUSION</u>**

Baxter's Motion to Dismiss (Doc. #55) and E&Y's Motion to Dismiss (Doc. #70) are GRANTED.  Philip Chan's and Chiu Chan's Joint Motion to Dismiss (Doc. #53) and Dynacq's Motion to Dismiss (Doc. #54) are DENIED.

IT IS SO ORDERED.

SIGNED this 28th day of July, 2005.

_____
Keith P. Ellison
United States District Judge


**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.**